IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :

In Re:
                :    Chapter 7

DOWNEY FINANCIAL CORP.,
                :    Case No. 08-13041 (CSS)

        Debtor.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MONTAGUE S. CLAYBROOK,
Chapter 7 Trustee for Downey Financial Corp.,    Adversary Proceeding

        Plaintiff,    :    Case No. 10-53731 (CSS)
      v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver for
Downey Savings & Loan, F.A.,

        Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ANSWER OF THE FDIC-R TO THE
## CHAPTER 7 TRUSTEE'S COMPLAINT

Defendant, the Federal Deposit Insurance Corporation ("FDIC"), as Receiver (in such

capacity, the "FDIC-R") of Downey Savings and Loan Association, N.A. ("Downey Savings"),

by its undersigned counsel, submits this Answer in response to the Complaint of Plaintiff,

Montague S. Claybrook, as Chapter 7 Trustee (the "Trustee") of Downey Financial Corp.

("DFC"), and states as follows:

1.    Denies the allegations contained in paragraph 1 of the Complaint, except admits that the quoted language is found in 28 U.S.C. § 1334(e), as alleged, and reserves all rights to which the FDIC-R is entitled pursuant to Title 12 of the United States Code.

2.    Denies the allegations contained in paragraph 2 of the Complaint, and reserves all rights to which the FDIC-R is entitled pursuant to Title 12 of the United States Code.

3.    Denies the allegations contained in paragraph 3 of the Complaint, and reserves all rights to which the FDIC-R is entitled pursuant to Title 12 of the United States Code.

4.    Denies the allegations contained in paragraph 4 of the Complaint, and reserves all rights to which the FDIC-R is entitled pursuant to Title 12 of the United States Code.

5.    Admits the allegations contained in paragraph 5 of the Complaint.

6.    Denies the allegations contained in paragraph 6 of the Complaint, except admits that the FDIC-R is the Receiver of Downey Savings pursuant to Title 12 of the United States Code.

7.    Admits the allegations contained in paragraph 7 of the Complaint.

8.    Denies the allegations contained in paragraph 8 of the Complaint, except admits that the FDIC-R sold certain assets of Downey Savings to U.S. Bank National Association pursuant to a Purchase and Assumption Agreement dated November 21, 2008 and related documents, and refers to the Purchase and Assumption Agreement and related documents for the contents thereof.

9.    Denies the allegations contained in paragraph 9 of the Complaint which assert legal conclusions to which no response is required, except admits that on November 25, 2008, DFC filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware, and reserves all rights to which the FDIC-R is entitled pursuant to Title 12 of the United States Code.

10. Denies the allegations contained in paragraph 10 of the Complaint, except admits the existence of an agreement entitled "Termination and Amendment Number 1 to Tax Sharing Agreement among Downey Financial Corp. and Affiliates," dated February 29, 2000, a copy of which is annexed to the Complaint as Exhibit "A" (the "Tax Sharing Agreement"), and refers to the Tax Sharing Agreement for the contents thereof.

11. Admits the allegations contained in paragraph 11 of the Complaint.

12. Denies the allegations contained in paragraph 12 of the Complaint, which assert legal conclusions to which no response is required.

13. Admits the allegations contained in paragraph 13 of the Complaint.

14. Denies the allegations contained in paragraph 14 of the Complaint.

15. Denies the allegations contained in paragraph 15 of the Complaint and refers to the Tax Sharing Agreement and to the Internal Revenue Code and the related regulations for the contents thereof.

16. Denies the allegations contained in paragraph 16 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

17. Denies the allegations contained in paragraph 17 of the Complaint and refers to the Tax Sharing Agreement for all the contents thereof.

18. Denies the allegations contained in paragraph 18 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

19. Denies the allegations contained in paragraph 19 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

20.     Denies the allegations contained in paragraph 20 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Denies the allegations contained in paragraph 22 of the Complaint, which assert legal conclusions to which no response is required.

23.     Denies the allegations contained in paragraph 23 of the Complaint.

24.     Denies the allegations contained in paragraph 24 of the Complaint, except admits that $17,489,369.18, representing the proceeds of a tax refund resulting from the 2007 federal tax return filed on behalf of Downey Savings and other affiliates (collectively, the "Affiliated Group") prior to November 25, 2008 (the "Petition Date"), was, upon information and belief, deposited in the Trustee's escrow accounts in accordance with the stipulation between the Trustee and the Receiver regarding certain tax refunds; and further admits that $373,791,733, representing tax refunds for the taxable years ending December 31, 2003, 2004, 2005, 2006 and 2007, together with statutory interest, have been asserted by the Trustee in federal income tax returns allegedly filed on behalf of the Affiliated Group.

25.     Denies the allegations contained in paragraph 25 of the Complaint, which asserts legal conclusions to which no response is required.

26.     Denies the allegations contained in paragraph 26 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

27.     Denies the allegations contained in paragraph 27 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

28.     Denies the allegations contained in paragraph 28 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

29.     Denies the allegations contained in paragraph 29 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

30.     Denies the allegations contained in paragraph 30 of the Complaint, which assert legal conclusions to which no response is required.

31.     Denies the allegations contained in paragraph 31 of the Complaint.

32.     Denies the allegations contained in paragraph 32 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

33.     Denies the allegations contained in paragraph 33 of the Complaint and refers to the Tax Sharing Agreement for the contents thereof.

34.     Denies the allegations contained in paragraph 34 of the Complaint, which assert legal conclusions to which no response is required.

35.     Denies the allegations contained in paragraph 35 of the Complaint, which assert legal conclusions to which no response is required.

36.     Denies the allegations contained in paragraph 36 of the Complaint.

37.     Denies the allegations contained in paragraph 37 of the Complaint, except admits that James F. Vordtriede, an employee of the FDIC, mailed to the IRS on or about November 28, 2008, a completed Department of the Treasury, Internal Revenue Service, Form 56-F entitled "Notice Concerning Fiduciary Relationship of Financial Institution" (a "Form 56-F") dated November 28, 2008.

38.     Denies the allegations contained in paragraph 38 of the Complaint, except admits that Mr. Vordtriede mailed a copy of the Form 56-F dated November 28, 2008 to DFC on or about March 12, 2009.

39.     Denies the allegations contained in paragraph 39 of the Complaint, except admits that Mr. Vordtriede mailed a copy of the Form 56-F dated November 28, 2008 to DFC in Newport Beach, California.

40.     Denies the allegations contained in paragraph 40 of the Complaint.

41.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 41 of the Complaint, except admits that the Trustee has represented that on September 15, 2009, he filed a Form 1120 with the IRS on behalf of the Affiliated Group and further admits that on or about September 25, 2009, through counsel, the Trustee provided a copy of a Form 1120 dated September 15, 2009 to counsel for the FDIC-R.

42.     Denies the allegations contained in paragraph 42 of the Complaint, except denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 42 of the Complaint concerning the economic value of DFC's equity in Downey Savings.

43.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 43 of the Complaint.

44.     Denies the allegations contained in paragraph 44 of the Complaint, except admits that the Trustee has represented that on or about September 16, 2009, he filed a Form 1139 with the IRS.

45.     Denies the allegations contained in paragraph 45 of the Complaint and refers to the Form 1139 for the terms and conditions thereof.

46.     Denies the allegations contained in paragraph 46 of the Complaint.

47.     Denies the allegations contained in paragraph 47 of the Complaint.

48.     Denies the allegations contained in paragraph 48 of the Complaint, except denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 48 of the Complaint concerning a letter dated October 26, 2009 that the Trustee allegedly received from the IRS.

49.     Denies the allegations contained in paragraph 49 of the Complaint, except admits that the Worker, Homeownership and Business Assistance Act of 2009 was signed into law on or about November 6, 2009.

50.     Denies the allegations contained in paragraph 50 of the Complaint, except admits that the Trustee has represented that on or about December 31, 2009, he filed a Form 1120X with the IRS.

51.     Denies the allegations contained in paragraph 51 of the Complaint, except admits that the Trustee has represented that, in a Form 1120X he filed with the IRS on or about December 31, 2009, he has sought refunds in the amounts set forth in paragraph 51 of the Complaint for the years identified, and further admits that, through counsel, the Trustee provided copies of a Form 1120X dated December 31, 2009 to counsel for the FDIC-R.

52.     Denies the allegations contained in paragraph 52 of the Complaint, except admits that the Trustee has represented that on or about September 10, 2010, he filed a second Form 1120X with the IRS.

53.     Denies the allegations contained in paragraph 53 of the Complaint, except admits that the Trustee has represented that he filed a Form 1120X on or about September 10, 2010 with

the IRS in which he sought refunds in the amount set forth in paragraph 53 of the Complaint together with statutory interest.

54.     Denies the allegations contained in paragraph 54 of the Complaint, except admits that on or about December 30, 2009, in response to a telephone call from the attorneys for the FDIC-R regarding both the FDIC-R's disagreement with the alleged worthless stock loss relied upon by the Trustee in the 2008 tax returns he filed as agent for the Affiliated Group, and the intent of the FDIC-R to file a motion to lift the automatic stay to permit the FDIC-R to file certain tax returns, as alternate agent of the Affiliated Group pursuant to 26 C.F.R. § 301.6402-7, the Trustee, by his counsel, sent a letter dated December 30, 2009 to the FDIC-R's counsel to which the FDIC-R, through its counsel, responded by letter dated January 5, 2010, and refers to all of the communications exchanged for the contents thereof.

55.     Admits the allegations contained in paragraph 55 of the Complaint.

56.     Denies the allegations contained in paragraph 56 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Complaint regarding the Trustee's knowledge, but admits that on or about January 4, 2010, the FDIC-R filed a motion with the Court seeking relief from the automatic stay nunc pro tunc and refers to the motion for the contents thereof.

57.     Denies the allegations contained in paragraph 57 of the Complaint, except denies knowledge and information sufficient to form a belief as to the truth of the matters contained in paragraph 57 to the extent they refer to the Trustee's knowledge.

58.     Denies the allegations contained in paragraph 58 of the Complaint.

59.     Denies the allegations contained in paragraph 59 of the Complaint.

60.     Denies the allegations contained in paragraph 60 of the Complaint.

61. Denies the allegations contained in paragraph 61 of the Complaint.

62. Denies the allegations contained in paragraph 62 of the Complaint, except admits that pursuant to stipulation approved by Order of the Court dated March 17, 2010, certain motions filed by both the FDIC-R and the Trustee concerning the automatic stay were withdrawn by each of the parties, without prejudice, and refers to the stipulation and Order for the contents thereof.

63. Denies the allegations contained in paragraph 63 of the Complaint, except admits that the Trustee and the FDIC-R entered into a stipulation approved by the Court by Order dated March 17, 2010, and refers to the stipulation for the contents thereof.

64. Denies the allegations contained in paragraph 64 of the Complaint.

65. Denies the allegations contained in paragraph 65 of the Complaint, except admits that on or about August 30, 2010, the FDIC-R filed a motion for relief from the automatic stay to allow the FDIC-R to file tax returns, as alternate agent of the Affiliated Group in accordance with 26 C.F.R. § 301.6402-7, and refers to the motion for the contents thereof.

66. Denies the allegations contained in paragraph 66 of the Complaint, except admits that on or about August 30, 2010, the FDIC-R filed a motion for relief from the automatic stay and refers to the motion for all of the terms and conditions thereof.

67. Denies the allegations contained in paragraph 67 of the Complaint.

68. Denies the allegations contained in paragraph 68 of the Complaint.

69. Denies the allegations contained in paragraph 69 of the Complaint, except admits that on or about September 13, 2010, the Court granted the motion of the FDIC-R for relief from the automatic stay pursuant to an Order of that date and refers to the Order for the contents thereof.

70. Denies the allegations contained in paragraph 70 of the Complaint.

71. Denies the allegations contained in paragraph 71 of the Complaint, except admits that the Trustee purports to incorporate his "Supplemental Objection to Motion of the Receiver of Downey Savings & Loan Association F.A. Seeking an Order Granting Relief from Automatic Stay," filed under seal on September 10, 2010 and docketed on September 14, 2010, Docket No. 466.

## COUNT I

72. In response to paragraph 72 of the Complaint, repeats and realleges each and every admission and denial set forth in paragraphs 1 through 71 hereof as if each of those admissions and denials were fully set forth at length hereat.

73. Denies the allegations contained in paragraph 73 of the Complaint, except admits that an actual and justifiable controversy exists between the Trustee and the FDIC-R over the ownership of federal tax refunds for tax years 2003-2007 (the "Tax Refunds").

74. Denies the allegations contained in paragraph 74 of the Complaint.

75. Denies the allegations contained in paragraph 75 of the Complaint, which assert legal conclusions to which no response is required.

76. Denies the allegations contained in paragraph 76 of the Complaint.

77. Denies the allegations contained in paragraph 77 of the Complaint, except admits that the FDIC-R asserts that the receivership estate of Downey Savings, not the DFC Chapter 7 estate, is the owner of the Tax Refunds.

78. Denies the allegations contained in paragraph 78 of the Complaint.

79. Denies the allegations contained in paragraph 79 of the Complaint.

80. Denies the allegations contained in paragraph 80 of the Complaint.

## COUNT II

81.     In response to paragraph 81 of the Complaint, repeats and realleges each and every admission and denial set forth in paragraphs 1 through 80 hereof as if each of those admissions and denials were fully set forth at length hereat.

82.     Denies the allegations contained in paragraph 82 of the Complaint.

83.     Denies the allegations contained in paragraph 83 of the Complaint.

84.     Denies the allegations contained in paragraph 84 of the Complaint, except admits that the Trustee purports to incorporate his Supplemental Objection by reference.

85.     Denies the allegations contained in paragraph 85 of the Complaint, except admits that the FDIC-R asserts that the receivership estate of Downey Savings owns the Tax Refunds.

86.     Denies the allegations contained in paragraph 86 of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

87.     Each of the Counts in the Complaint fails to state a claim against the FDIC-R upon which relief can be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

88.     On or about February 29, 2000, Downey Savings, DFC and their affiliates (the "Affiliated Group") executed an agreement entitled "Termination and Amendment Number 1 to Tax Sharing Agreement among Downey Financial Corp. and Affiliates" (the "Tax Sharing Agreement").

89.     On November 21, 2008 (the "Receivership Date"), the Director of the Office of Thrift Supervision appointed the FDIC-R as the Receiver of Downey Savings.

90.     As of the Receivership Date, Downey Savings was a wholly-owned subsidiary of DFC.

91.     On November 25, 2008 (the "Petition Date"), DFC filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court, and on November 26, 2008, Montague S. Claybrook was appointed as Chapter 7 Trustee of DFC.

92.     The Trustee received or holds on deposit in one or more escrow accounts under his control a minimum of approximately $17.5 million in tax refunds (the "Initial Tax Refunds").

93.     In addition, the Trustee, as agent, allegedly pursuant to 26 C.F.R. § 1.1502-77, and the FDIC-R, as alternate agent, pursuant to 26 C.F.R. § 301.6402-7, have each filed consolidated tax returns on behalf of the Affiliated Group, seeking refunds for tax years 2003-2007 in the approximate amount of $373,791,733 (the "2008 Tax Refunds"; and collectively with the "Initial Tax Refunds," the "Tax Refunds").

94.     The FDIC-R, as Receiver of Downey Savings, is the owner of the Tax Refunds.

95.     The Tax Refunds arise because of the income that Downey Savings generated over the years in issue, 2003 through 2007, the taxes that Downey Savings paid in those years, and/or the losses attributable to Downey Savings' operations in 2008.

96.     Downey Savings was the principal operating entity of the Affiliated Group. The taxes paid in the years 2003-2007 were based almost entirely upon the tax liability of Downey Savings. DFC did not generate tax liability in the years in issue on which to base the Tax Refunds.

97.     Downey Savings, not DFC, was the source of substantially all of the tax payments to the IRS on which the Tax Refunds are based. DFC did not fund any of the tax payments to the IRS.

98.     DFC, as the "common parent" of the Affiliated Group, acted as agent for the Affiliated Group in connection with the filing of consolidated tax returns and the remittance to

12

the IRS of the taxes due. DFC's remittance, as agent, of the payments due the IRS, on behalf of Downey Savings, did not in any way alter the fact that the tax payments were made by Downey Savings in payment of tax liability it generated as a result of its operations. DFC acted as a mere conduit.

99. The losses upon which the 2008 Tax Refunds are based are attributable to Downey Savings, not DFC.

100. Downey Savings had massive net operating losses in 2008, in excess of $1.6 billion (the "Downey NOLs"). The Trustee has represented that he filed a Form 1120 with the IRS on or about September 15, 2009, which he states he thereafter amended by filing Forms 1120X on December 31, 2009 and September 10, 2010, and a Form 1139 on September 16, 2009 (collectively, the "Trustee Tax Returns").

101. In the Trustee Tax Returns, the Trustee asserted the alleged loss in value of DFC's equity in Downey Savings (the "Alleged Worthless Stock Loss") as the loss on which the 2008 Tax Refunds are based.

102. The Alleged Worthless Stock Loss is not a valid basis on which to seek the 2008 Tax Refunds. Even if it were a valid basis on which to seek those refunds, the Alleged Worthless Stock Loss is still fully derivative of the Downey NOLs. Any loss in the value of DFC's equity in Downey Savings results only because Downey Savings incurred substantial net operating losses in 2008, which resulted in the Downey NOLs.

103. At no time did Downey Savings expressly or implicitly transfer or relinquish its property interest in the Tax Refunds to DFC, whether by consenting to the filing of consolidated tax returns, entering into the Tax Sharing Agreement, or otherwise.

13

104.    In the Tax Sharing Agreement Downey Savings did not assign or otherwise transfer its property interest in the Tax Refunds to DFC, and no provision of the Tax Sharing Agreement vests DFC with such ownership interest.

105.    The Tax Sharing Agreement requires that in "no instance" shall the allocation of tax liability to any member of the Affiliated Group thereunder be "less favorable" to any member of the Affiliated Group than the tax liability that would result from such member's filing a separate tax return on a standalone basis.

106.    Had Downey Savings filed a separate return based upon the Downey NOLs, that filing would have generated refunds in the same amount as the 2008 Tax Refunds.

107.    The FDIC-R, as Receiver of Downey Savings, not the Trustee on behalf of the Chapter 7 estate of DFC, owns the Tax Refunds and is entitled to them.  Any other result would be inequitable and would constitute an inappropriate windfall to the DFC Chapter 7 estate.  If the Trustee is successful in obtaining any portion of the Tax Refunds, the DFC Chapter 7 estate will have been unjustly enriched at the expense of the receivership estate of Downey Savings.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

108.    The FDIC-R repeats paragraphs 87 through 107 hereof as through fully set forth at length hereat.

109.    By operation of law, upon its appointment as Receiver of Downey Savings, the FDIC-R acceded to all of the rights, titles, powers and privileges granted to a receiver of a federally insured depository institution under Title 12 of the United States Code, including, without limitation, those set forth in 12 U.S.C. § 1821(d)(2)(A).

110.    Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), upon its appointment as Receiver of Downey Savings, the FDIC-R, by operation of law, succeeded to "all rights, titles, powers, and

14

privileges" of Downey Savings and with respect to Downey Savings and "the assets" of Downey Savings, of, inter alia, any "stockholder . . . of [Downey Savings]."

111.    The Receivership Date was November 21, 2008.    The Petition Date was November 25, 2008.    Accordingly, the FDIC-R had succeeded to "all rights, titles, powers, and privileges" of DFC with respect to Downey Savings and the assets of Downey Savings prior to the Petition Date and neither the Trustee nor the DFC Chapter 7 estate ever acceded to any such rights, titles, powers and privileges of DFC.

112.    Notwithstanding the foregoing, the Trustee has taken action to usurp, or which is intended to usurp, the rights, titles, powers and privileges held by the FDIC-R pursuant to Title 12.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

113.    The FDIC-R repeats paragraphs 108 through 112 hereof as through fully set forth at length hereat.

114.    The Tax Refunds are not property of the estate within the meaning of Section 541(a) of the Bankruptcy Code.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE
## (IN THE ALTERNATIVE)

115.    The FDIC-R repeats paragraphs 87 through 107 hereof as through fully set forth at length hereat.

116.    Under the Tax Sharing Agreement, DFC, and upon his appointment the Trustee, was required in good faith to consider any tax treatment proposed by any member of the Affiliated Group. See Tax Sharing Agreement, § 2.4(a)(i)(A).

117.    Under the Tax Sharing Agreement, DFC, and, upon his appointment the Trustee, could not unreasonably withhold consent to any election requested by a member of the Affiliated

Group in connection with any consolidated tax return the Trustee filed under the Internal Revenue Code, as agent, on behalf of the Affiliated Group. See Tax Sharing Agreement, § 2.4(a)(i)(B).

118. Under the Tax Sharing Agreement, DFC, and, upon his appointment, the Trustee, was required to promptly notify the members of the Affiliated Group of any "tax liability or refund issue. . . ." See Tax Sharing Agreement, § 2.4(b).

119. On or about September 25, 2009, the Trustee, through counsel, delivered to counsel for the FDIC-R a copy of a Form 1120, U.S. Corporation Income Tax Return, for the 2008 tax year (the "Form 1120"), which the Trustee asserted he had filed with the IRS on behalf of the Affiliated Group on or about September 15, 2009. Thereafter, the Trustee, through counsel, produced to counsel for the FDIC-R a Form 1139, Corporation Application for Tentative Carryback Refund, which the Trustee asserted he had filed with the IRS on or about September 16, 2009 on behalf of the Affiliated Group ("Tentative Carryback Request").

120. The Trustee prepared and filed the Form 1120 based upon the Alleged Worthless Stock Loss but at no time either before or after the preparation of the Form 1120 did the Trustee advise the FDIC-R that the Form 1120 would use the Alleged Worthless Stock Loss as the basis for the 2008 Tax Refunds.

121. Upon information and belief, the Trustee was aware that the FDIC-R would have objected to the Trustee's reliance on the Alleged Worthless Stock Loss, rather than the Downey NOLs, as the basis for the refunds sought in connection with the Form 1120 that the Trustee asserts he filed in September 2009 on behalf of the Affiliated Group.

122. Upon information and belief, the Trustee was aware that had the FDIC-R known of his intent to assert the Alleged Worthless Stock Loss, the FDIC-R would have advised the

16

Trustee of the FDIC-R's view that the Alleged Worthless Stock Loss was not an appropriate basis on which to seek the 2008 Tax Refunds.

123. Upon information and belief, the Trustee was aware at the time that he asserts he filed the Form 1120 and the Tentative Carryback Request, that the FDIC-R would have requested that the Trustee elect to rely upon the Downey NOLs, rather than the Alleged Worthless Stock Loss, as to which request the Trustee could not have unreasonably withheld his consent.

124. By willfully failing to advise the FDIC-R of the Trustee's reliance upon the Alleged Worthless Stock Loss, rather than the Downey NOLs, as the basis for the 2008 Tax Refunds, the Trustee attempted to gain an advantage over the FDIC-R in connection with the recovery of the Tax Refunds.

125. As the result of the Trustee's purposeful failure to advise the FDIC-R that the Form 1120 was prepared using the Alleged Worthless Stock Loss, the FDIC-R learned about the Trustee's reliance on that alleged loss after the Form 1120 was filed with the IRS by the Trustee.

126. In late 2009, Congress enacted the Worker, Homeownership and Business Assistance Act of 2009 (the "Business Assistance Act"). Under the Business Assistance Act, all taxpayers (except Troubled Asset Relief Program recipients) were permitted to increase the carryback period for applicable net operating losses for up to five years. See Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, § 13, 123 Stat. 2992-93 (2009).

127. The Trustee asserts that on December 31, 2009, on behalf of the Affiliated Group, he filed a Form 1120X, U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax,

for each of the Taxable Years Ending December 31, 2003, 2004, 2005, 2006 and 2007 (the "Amended Returns"), seeking total tax refunds of approximately $314 million.

128.    In the Amended Returns, the Trustee continued to assert the Alleged Worthless Stock Loss as the basis for the 2008 Tax Refunds.

129.    Prior to the filing of the Amended Returns, the Trustee knew that the FDIC-R disagreed with the Trustee's assertion that the Alleged Worthless Stock Loss was a proper loss on which to seek the 2008 Tax Refunds.

130.    The Trustee has asserted that on September 10, 2010, he filed a second Form 1120X, U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax, for each of the Taxable Years Ending December 31, 2003, 2004, 2005, 2006 and 2007 (the "Second Amended Returns"), seeking total tax refunds of approximately $373,791,733.

131.    Prior to the filing of the Second Amended Returns, the Trustee knew that the FDIC-R disagreed with the Trustee's assertion the Alleged Worthless Stock Loss was a proper loss on which to seek the 2008 Tax Refunds.

132.    In direct violation of the Trustee's obligations under the Tax Sharing Agreement, including, without limitation, his obligation under Section 2.4(a)(i)(A) to "consider in good faith any treatment proposed by the Affiliated Group members," and his obligation under Section 2.4(a)(i)(B), to "not unreasonably withhold [his] consent to any elections which members of the Affiliated Group desire to make," the Trustee filed the Amended Returns and the Second Amended Returns based upon the Alleged Worthless Stock Loss.

133.    In direct violation of the Trustee's obligations under the Tax Sharing Agreement, including, without limitation, the Trustee's obligation under Section 2.4(b) to advise and consult in good faith with the members of the Affiliated Group with respect to the contest of any tax

18

refund issue, on October 29, 2010, without notice to, consultation with, or seeking advice from, the FDIC-R, the Trustee commenced an action in the United States Court of Federal Claims styled *Claybrook v. The United States* (No. 10-734T), seeking recovery of the 2008 Tax Refunds (the "Court of Claims Action").

134. In purposefully disregarding the FDIC-R's rights, the Trustee sought, and by his conduct continues to seek, an inequitable advantage in connection with the recovery of the Tax Refunds.

135. The Trustee has improperly used, and continues to improperly use, the automatic stay of the Bankruptcy Code as a "sword" in order to prejudice the FDIC-R.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE
## (IN THE ALTERNATIVE)

136. The FDIC-R repeats paragraphs 115 through 135 hereof as through fully set forth at length hereat.

137. The Trustee has breached the provisions of the Tax Sharing Agreement by, among other things: (a) failing to promptly notify the FDIC-R of "tax liability or refund issue[s] . . . ," as required by Section 2.4(b) of the Tax Sharing Agreement; (b) failing to "consider in good faith any treatment proposed by the Affiliated Group members," as required by Section 2.4(a)(i)(A) of the Tax Sharing Agreement; (c) "unreasonably withhold[ing] [his] consent to any elections which members of the Affiliated Group desire to make," as required by Section 2.4(a)(i)(C) of the Tax Sharing Agreement; and (d) failing to advise and consult in good faith with the FDIC-R concerning the commencement of the Court of Claims Action in violation of Section 2.4(b) of the Tax Sharing Agreement.

138. The Trustee's multiple breaches of the Tax Sharing Agreement were material.

139. Having materially breached the provisions of the Tax Sharing Agreement, the Trustee cannot rely, and is estopped from relying, on the Tax Sharing Agreement to assert his ownership of the Tax Refunds.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE
## (IN THE ALTERNATIVE)

140. The FDIC-R repeats paragraphs 87 through 139 hereof as through fully set forth at length hereat.

141. The FDIC-R is the rightful owner of the Downey NOLs and the Tax Refunds.

142. By engaging in the actions referred to above, the Trustee has wrongfully exercised ownership, dominion and control over the Tax Refunds.

143. By reason of the actions referred to above, the Trustee has sought to convert the Downey NOLs and the Tax Refunds.

144. The Trustee has unclean hands.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE
## (IN THE ALTERNATIVE)

145. The FDIC-R repeats paragraphs 136 through 139 hereof as through fully set forth at length hereat.

146. Under the Tax Sharing Agreement, the Trustee was required to comply with a covenant or duty of good faith and fair dealing that is implied in all contracts.

147. As alleged herein, the Trustee has breached that covenant or duty of good faith and fair dealing by, among other things, and without limitation: (a) seeking the 2008 Tax Refunds based upon the Alleged Worthless Stock Loss rather than based upon the Downey NOLs and thereby attempting to obtain an inequitable windfall at the expense of the FDIC-R, and (b) willfully concealing from the FDIC-R his actions in seeking the 2008 Tax Refunds based

20

upon the Alleged Worthless Stock Loss rather than the Downey NOLs, in an attempt to deprive the FDIC-R of its rights to propose "alternative treatments" pursuant to Section 2.4(a)(i)(A) of the Tax Sharing Agreement or make "elections" pursuant to Section 2.4(a)(i)(C) of the Tax Sharing Agreement.

148.    The Trustee's multiple breaches of the covenant or duty of good faith and fair dealing implied in the Tax Sharing Agreement were material.

149.    Having materially breached the provisions of the covenant or duty of good faith and fair dealing implied in the Tax Sharing Agreement, the Trustee cannot rely, and is estopped from relying, on the Tax Sharing Agreement to assert his ownership of the Tax Refunds.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

150.    The FDIC-R repeats paragraphs 87 through 149 hereof as through fully set forth at length hereat.

151.    In this action, the Trustee, as the legal representative of the DFC Chapter 7 estate, seeks a declaration that the Tax Refunds are property of the DFC Chapter 7 estate, not the receivership estate of Downey Savings for which the FDIC-R has been appointed Receiver.

152.    Title 12 of the United States Code sets forth the procedure with which a person or entity must comply to assert a claim against the property of a financial institution for which the FDIC acts as Receiver, including, without limitation, a claim seeking a determination of rights in and to the property of such receivership estate.

153.    The claims procedure outlined in Title 12 is exclusive.

154.    In accordance with the claims procedure of Title 12 of the United States Code, the FDIC-R set February 26, 2009 as the bar date for asserting claims against the receivership estate of Downey Savings.

155. On or about February 24, 2009, the Trustee filed a proof of claim with the FDIC-R on behalf of the DFC Chapter 7 estate asserting claims against the Downey Savings receivership estate (the "Initial DFC Claim").

156. The Trustee did not include in the Initial DFC Claim any claim concerning any or all of the Tax Refunds.

157. On or about June 26, 2009, the Trustee filed with the FDIC-R an amended claim against the Downey Savings receivership estate (the "Amended DFC Claim").

158. The Trustee did not include in the Amended DFC Claim any claim concerning any or all of the Tax Refunds.

159. By reason of the Trustee's failure to submit a claim against the Downey Savings receivership estate for a determination of rights in and to any or all of the Tax Refunds, the Trustee is barred by law from seeking to have those rights adjudicated in this Court.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

160. The FDIC-R repeats paragraphs 150 through 159 hereof as through fully set forth at length hereat.

161. The Court lacks subject matter jurisdiction to adjudicate the Trustee's claim for a declaration that the Tax Refunds are property of the DFC Chapter 7 estate.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

162. The FDIC-R repeats paragraphs 160 through 161 hereof as through fully set forth at length hereat.

163. The Trustee owes fiduciary duties to all creditors of the DFC Chapter 7 estate, including, without limitation, the duties of impartiality and good faith.

164. The FDIC-R as Receiver of Downey Savings is a creditor of the DFC Chapter 7 estate. The Trustee owes to the FDIC-R the same fiduciary duties as he owes to each other creditor of the DFC Chapter 7 estate.

165. The Trustee has not, however, treated the FDIC-R impartially or in good faith.

166. Among other things, and without limitation, from on or about the Petition Date, the Trustee has taken steps to undermine the FDIC-R's position with respect to the DFC Chapter 7 estate.

167. The Trustee alleges that he owns the 2008 Tax Refunds on behalf of the DFC Chapter 7 estate regardless of whether the 2008 Tax Refunds are based upon the Downey NOLs or the Alleged Worthless Stock Loss. The Trustee has admitted that the amount of the 2008 Tax Refunds that he alleges are owned by the DFC Chapter 7 estate would be the same, regardless of whether the Downey NOLs or the Alleged Worthless Stock Loss is relied upon as the basis for the 2008 Tax Refunds.

168. Nonetheless, in the Trustee Tax Returns and by this Action, the Trustee asserts the Alleged Worthless Stock Loss as the basis for the 2008 Tax Refunds.

169. Upon information and belief, the Trustee asserts the Alleged Worthless Stock Loss for the purpose of undermining the position asserted by the FDIC-R in the DFC Chapter 7 case.

170. The Trustee has breached, and continues to breach, his fiduciary duties to the FDIC-R.

171. The Trustee has unclean hands.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

172.    The FDIC-R repeats paragraphs 162 through 171 hereof as through fully set forth at length hereat.

173.    Pursuant to 26 U.S.C. § 1501, an affiliated group of companies has the privilege of filing a consolidated income tax return. The Tax Sharing Agreement implements this privilege and is necessarily subject to any limitation upon that privilege set forth in the Internal Revenue Code or in any regulation issued by the IRS relating thereto.

174.    The regulations issued by the IRS to implement the privilege of a parent, as agent, to file consolidated tax returns on behalf of an affiliated group are subject to the rights of the FDIC, as receiver of an insolvent financial institution under 26 C.F.R. § 301.6402-7, to act as an alternate agent of the affiliated group of which such insolvent financial institution is part. See 26 C.F.R. § 1.1502-77(g); 26 C.F.R. § 1.1502-78(b)(3).

175.    Downey Savings is an insolvent financial institution for which the FDIC is acting as Receiver.

176.    By reason of the foregoing, whatever rights the Trustee asserts, arising from and related to the Tax Sharing Agreement or otherwise, to act as agent of the Affiliated Group are subject to the rights to the FDIC-R to act as alternate agent of the Affiliated Group pursuant to 26 C.F.R. § 301.6402-7.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

177.    The FDIC-R repeats paragraphs 172 through 176 hereof as through fully set forth at length hereat.

178.    Upon its appointment as Receiver for Downey Savings, the FDIC-R submitted to the IRS a "Notice Concerning the Fiduciary Relationship of Financial Institution," on Form 56-F

("Form 56-F"). The purpose of a Form 56-F is for one agency of the government, here the FDIC, to give another agency, the IRS, notice that the former has become a fiduciary for an insolvent financial institution.

179.    On or about November 28, 2008, an employee of the FDIC submitted a Form 56-F to the IRS with respect to the appointment of the FDIC-R as Receiver of Downey Savings, and on October 7, 2009, a further Form 56-F was submitted to the IRS with respect to the appointment of the FDIC-R as Receiver of Downey Savings.

180.    The submission to the IRS by the FDIC, as Receiver of a failed institution, of a Form 56-F is not an act to recover a claim against, or to obtain possession of, or from, property of a Chapter 7 estate or to exercise control over property of a Chapter 7 estate. Rather, the submission of a Form 56-F is a ministerial act and is not an act that is or can be in violation of the automatic stay of Section 362(b) of the Bankruptcy Code.

181.    However, should the Court determine that the automatic stay applies to the submission of either of the Forms 56-F that were submitted to the IRS after the Petition Date concerning the appointment of the FDIC-R as Receiver of Downey Savings, the Court should retroactively annul the stay "nunc pro tunc" with respect thereto and, in addition, lift the automatic stay with respect to the FDIC-R's future submission of Forms 56-F in every year in which it continues to act as Receiver for Downey Savings.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

182.    The FDIC-R repeats paragraphs 177 through 181 hereof as through fully set forth at length hereat.

183. As Receiver, the FDIC-R is charged under Title 12 of the United States Code with an obligation to "preserve and conserve the assets and property" of the failed institution. 12 U.S.C. 1821(d)(2)(B)(iv).

184. The FDIC-R has at all times acted in good faith, consistent with its statutory mandate to protect "preserve and conserve the assets and property" of Downey Savings.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

185. The FDIC-R repeats paragraphs 182 through 184 hereof as though fully set forth at length hereat.

186. Any monies held by the Trustee on account of any of the Tax Refunds are held in trust for the benefit of the FDIC-R.

WHEREFORE, the FDIC-R requests that the Court grant judgment in favor of the FDIC-R denying all of the claims asserted in the Complaint, finding that the FDIC-R is the owner of the Tax Refunds, and awarding the FDIC-R its costs and disbursements, together with such other and further relief as the Court may deem just and proper.

Dated: December 10, 2010

FEDERAL DEPOSIT INSURANCE
CORPORATION
Kathryn R. Norcross
Senior Counsel
Sonya L. Levine
Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226
Tel: (703) 562-2783
Fax: (703) 562-2475

BAYARD, P.A.


*/s/ Daniel A. O'Brien, Esq.*
Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Daniel A. O'Brien (No. 4897)
222 Delaware Ave., Suite 900
Wilmington, Delaware 19899
Tel.: (302) 655-5000
Fax: (302) 658-6395

-and-

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Melanie L. Cyganowski
Peter Feldman
(Admitted Pro Hac Vice)
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104
*Counsel for the Federal Deposit Insurance
Corporation, in its Capacity as Receiver*